People v Parekh (2025 NY Slip Op 52045(U))

[*1]

People v Parekh

2025 NY Slip Op 52045(U)

Decided on December 21, 2025

Justice Court Of The Village Of Piermont, Rockland County

Ruby, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 21, 2025
Justice Court of the Village of Piermont, Rockland County

The People of the State of New York, Plaintiff,

against
Manish D. Parekh, Defendant.

Case No. 24-06-0002

For the People: Rockland County District Attorney's Office; New City, NY
For the Defense: Kevin M. Dunlap, Esq.; Gribetz & Loewenberg, PLLC; New City, NY

Marc R. Ruby, J.

BACKGROUND
The Defendant [FN1]
stands charged under a single Information, with single counts of contravening both NY PENAL LAW ("PL") § 130.52 (1), Forcible touching, and, § 130.55 (1), Sexual abuse in the third degree; Class A misdemeanors. The two charges arise from an alleged encounter between the Defendant and the Complainant, inside a mini-mart. At arraignment, on June 10, 2024, the Defendant pled not guilty to both charges. Upon posting a $10,000.00 bail bond ("Bond"), the Defendant was released, subject to the terms of an order of protection in the Complainant's favor.
Inasmuch as the Defendant was charged with misdemeanor conduct, the People were obligated to be ready for trial, within 90 days of commencing the criminal action. NY CRIM. PROC. LAW ("CPL") § 30.30 (1) (b)[FN2]
. Meanwhile, under CPL § 245.50 (3), the People may not declare their statement of trial readiness ("SOR"), until a valid certificate of compliance with automatic discovery obligations, set forth under CPL § 245.20 ("COC") has been filed. These requirements are specific to the State of New York, and are not codifications of generalized constitutional rights. Yet, while these timeframes and obligations only speak to prosecutorial readiness, the legislation is nonetheless derivative of the Sixth Amendment to the U.S. Constitution; namely:
In all criminal prosecutions, the accused shall enjoy the right to a speedy [ . . . ] trial [ . . . ], and to be informed of the nature and cause of the accusation [and] to be confronted with the [prosecution's] witnesses [ . . . ]. US Const, 6th amend.
On September 5, 2024, the People filed an off-calendar COC, and a corresponding SOR. In all events, the timeliness of these filings, set forth by CPL § 30.30 (1) (b), is not contested. After the subsequent September 18, 2024 criminal session, the case was adjourned, so the Defense could consider whether there was a basis for challenging the sufficiency of the COC/SOR. When the case came back on November 20, 2024, the Court held an on-record COC compliance inquiry. The People maintained their readiness, and the Defense did not lodge an objection. Over the ensuing months, the case was repeatedly adjourned sometimes for plea discussions between the parties, and sometimes because of interpreter unavailability. There does not appear to be any dispute that all of the adjournments were made upon consent of the parties.
Ultimately, the case was set down for a jury trial to be held on Monday, October 6, 2025. The Rockland County Commissioner of Jurors issued corresponding summonses, and a 40+ person venire was set to report for duty. On October 1, 2025, the People indicated additional discovery had come to light, whilst meeting with the Piermont Police ("PPD"), in preparation for trial. As a result, the People filed and served a Supplemental COC/SOR. The proposition that the Defense was entitled to the additional discovery it is not controversial. Accordingly, the Defense objected to the production on the eve of trial. In light of the circumstances, the Court cancelled the trial, and granted the Defense leave for filing the instant motion. Thereunder, the Defense prays for an Order dismissing the charges, in accordance with CPL §§ 30.30; 170.30; and, 245.50.

POINTS OF COUNSEL
In moving, the Defense avers the People belatedly produced: 8 pages of information regarding the Defendant; lab results from tests performed on the Complainant; 12 pages of computer readouts associated with a (license) plate reader; and, 4 pages of handwritten notes from witnesses, mentioning statements made by the Complainant.
The People are fully opposed, and contend the belatedly produced material consists of: a photo array from which the Complainant identified the Defendant; irrelevant license plate reader printouts solely relating to efforts made toward locating the Defendant; alternative forms of lab results; notes indicating witnesses went inside the mini-mart and yelled at an older man; and, other mostly duplicative material. The People maintain they produced everything then known to them, and the Defense never objected, or indicated anything was missing. The People state that the belatedly produced materials were not initially apparent, because the materials were duplicitous. The People further contend: they had been in regular communication with the PPD; they produced the additional materials as soon as they become aware of the oversight; the belated production has not prejudiced the Defense; and, under the totality of circumstances, the People were diligent and acted in good faith.
As such, the People posit only 56 days of their 90-day CPL § 30.30 allotment have accrued, because in short, the initial COC/SOR filings were well within time, the adjournments between the initial and Supplemental COC/SOR's were all made upon consent, and/or because [*2]the Court tolled the clock by setting a motion schedule back in November 2024 [FN3]
. 
In reply, the Defense contends the People failed to exercise due diligence before filing the initial COC/SOR. The Defense states the People have attempted to shift their burden by suggesting the Defense failed to object to an incomplete COC. In any event, the Defense insists there was no reason to suspect anything was awry, and the accuracy of the COC and completeness of the corresponding production were relied upon (presumably in tailoring a trial defense).

LEGAL ANALYSIS
Unlike CPL § 30.20, CPL § 30.30 only addresses speedy trial protections in the context of prosecutorial readiness for trial. People v. Anderson, 66 NY2d 529, 535 (1985). An SOR is a representation to the court, with only one meaning the People are ready, and have done all that is required to proceed to trial. People v. Khachiyan, 194 Misc 2d 161, 164-165 (Crim Ct, Kings County 2002). Once the People have filed an SOR, the People are only charged with periods of delay resulting from their own conduct, and cannot be charged with post-filing delays resulting from factors outside their control. People v. Canosa, 38 Misc 3d 1231[A] *4-5, 2016 NY Slip Op 50354 [U] (Nassau Dist Ct, 1st Dist 2013).
An SOR is not automatically rendered illusory, just because the People may not be ready on a subsequent adjourned date. People v. Balcerak, 20 Misc 3d 133[A] *1, 2008 Slip Op 51466[U] (App Term, 2d Dept, 9th & 10th Jud Dists 2008). As such, an ADA's post-readiness personal scheduling conflicts, will not render an SOR illusory. People v. Joyce, 55 Misc 3d 1214[A] *8, 2017 Slip Op 50581 [U] (Sup Ct, New York County 2017). Similarly, the People are not required to contact and produce their witnesses on every adjourned date. People v. Peters, 31 Misc 3d 131[A] *1, 2011 Slip Op 50593[U] (App Term, 2d Dept, 9th & 10th Jud Dists 2011).
Rather, readiness entails the People having removed all legal impediments (factors or issues relating to the case) prior to the commencement of trial. People v. Mahmood, 13 Misc 3d 1206[A] *3, 2006 Slip Op 51705 (Crim Ct, Kings County 2006); Joyce, supra at *8.
When a defendant alleges the People did not declare readiness with the time afforded under CPL § 30.30, the burden shifts to the People to: a) clarify the record so the court can make an informed accounting of time; and, b) show the delay was excusable. People v. Ryan, 237 AD3d 754, 755 (2d Dept 2025). While the People must act with good faith in complying with CPL Art. 245 obligations, good faith alone cannot cure a lack of due diligence in complying. People v. McMahon, 237 AD3d 746, 750 (2d Dept 2025). Accordingly, the People must establish they were duly diligent in making reasonable inquires before filing an SOR despite a belated/missed discovery production. id. at 750.
Factors relevant is assessing the People's due diligence include: the People's efforts to comply with their obligations; the volume of discovery; the case's complexity; whether the People knew belatedly disclosed materials existed; the explanation for any lapse; who the People responded when apprised of missing discovery; whether belated discovery was substantively duplicative, insignificant, or easily remedied; whether the omission was corrected; whether the People self-reported and remediated without court intervention; and whether delayed [*3]disclosure prejudiced the defense, or impeded the defense's investigation of trial preparation. CPL § 245.50 (5) (a).
If the People cannot meet this burden, the COC is improper, the SOR is illusory, and if chargeable time then exceeds what is afforded under CPL § 30.30, the case is dismissed. McMahon, supra at 750; People v. Watkins, 224 AD3d 1342, 1343 (4th Dept 2024).
An SOR will only preserve (any) remaining portion of CPL § 30.30 time, where some exceptional fact or circumstance subsequently renders it impossible for the People to proceed to trial. Anderson, supra at 535. As such, where an SOR does not accurately reflect the People's position, the People are charged with the entire time running between the illusory SOR and subsequent case preparation or court dates. People v. Rodriguez, 135 AD3d 587, 588 (1st Dept 2016); People v. Rios, 47 Misc 3d 1220[A] *5, 2015 Slip Op 50722[U] (Crim Ct, Kings County 2015). Therefore, this means, once an SOR is declared illusory, subsequent adjournments are chargeable to the People. People v. Reyes, 53 Misc 3d 1207[A] *6, 2016 NY Slip Op 51472 [U] (Crim Ct, Bronx County 2016).
CPL Art. 245 does not demand perfection, or impose strict liability on to the People. McMahon, supra at 750. Nevertheless, the People should assess discovery issues with police officers involved in the investigation prior to the eve of a discovery conference. People v. Hernandez, 81 Misc 3d 1201[A] *5, 2023 NY Slip Op 52101 [U] (Crim Ct, Bronx County 2023). And a fortiori, it is not duly diligent for the People to leave discovery compliance obligations until trial preparation. People v. Valentin, 82 Misc 3d 1237[A] *4, 2024 NY Slip Op 50487 [U] (Crim Ct, Bronx County 2024). This is because any CPL § 245.20 (2) materials held by the police are deemed to be in the People's possession. People v. LaClair, 79 Misc 3d 8, 11 (App Term, 2d Dept, 9th & 10th Jud Dists 2023).

DISCUSSION
Here, at the outset, the Court is mostly unfamiliar with the facts of the case. There have been no antecedent motions. There have been no hearings with testimony. Any exhibits appended to the instant filings consist of production logs, listing electronic file names, and not the primary materials. In addition, both the People and the Defense expressly wished for this matter to be decided on the papers, and without oral argument.
The Court understands there is a video recording(s) from inside the mini-mart, but the Court has never watched it. From the filings, it seems there was a photo array (presumably presenting a photograph of the Defendant alongside other individuals). Once again, the Court has never seen the array. While the Court also understands lab tests were performed on the Complainant, the Court does not know what the Complainant was tested for, or what any results revealed. As a result, the Court does not know what significance these materials might have to a trial strategy.
When a factual universe is closed, a Defendant may accept an interpretation of a piece of evidence as binding. However, when the universe expands and there are two pieces of evidence, differing interpretations may arise. And these differences might create reasonable doubt. For example, if a video is the only visual evidence depicting a man and a woman, a defendant might conclude the trial defense has a he-said/she-said dynamic. Yet, if there is a photo array, and the man in the array doesn't look like the man in the video, a defendant might instead consider [*4]running a Shaggy defense [FN4]
, instead of playing he-said/she-said. The Court is not in a position to presume the Defense should run any particular play. Nor is the Court competent to accept that any particular import or uselessness attaches to evidence the Court has never seen. Trial strategy is sacrosanct; where one sees garbage, another sees gold.
What the Court does know is: 15+ months elapsed between the case's commencement, and the production of additional discovery on trial's eve. As such, the Defense had necessarily prepared under a premise that the operative factual universe was finite. Moreover, by objective measure, the People were preparing for a Monday trial, on the preceding Wednesday, when they discovered the subject materials. Therefore, had this preparation taken place before the initial COC/SOR filings, none of this would have been an issue.
The Court also notes the courthouse and PPD stationhouse are located in the same building. In addition, PPD officers regularly provide courtroom security. Accordingly, every time the People were in Court on other matters, during this case's pendency, they could have sat down with the PPD, and found the materials sooner. At the same time, the Court will not entertain any suggestion where the PPD bears responsibility for the discovery lapse. Aside from the materials being statutorily deemed within the People's possession, the PPD necessarily recognized these materials had evidentiary value, and demonstrated the presence of mind and professionalism to have retained and maintained them in a readily accessible manner [FN5]
. 
The Court has no trouble concluding the People have acted in the utmost good faith, throughout this case's pendency. It is not lost upon the Court that the People were the ones who discovered the materials, who immediately gave the materials to the Defense, who assembled a multiple ADA response team, and who immediately notified the Court of the lapse. Nevertheless, McMahon makes clear that the People's good faith is not enough. Accordingly, the People's good faith is considered under the prongs of CPL § 245.50 (5)'s due diligence analysis, namely:

The People's efforts to comply with CPL Art. 245.50
The Court finds there was a bifurcation of the People's efforts, between the initial COC/SOR filings, and the time after the lapse was discovered. In the former instance, the efforts were insufficient. To this end, the People had not done all that was required before filing the COC/SOR, as mandated by Khachiyan, because there was an impediment to readiness under Mahmood and Joyce. Moreover, under Canosa, the lapse was caused by circumstances within the People's control. After all, since police materials are deemed within the People's control under LaClair, the People should have met with the PPD earlier, as mandated in Hernandez and Valentin. 

The volume of discovery
The Court is aware that voluminous discovery makes it harder for the People to [*5]determine whether something was missed. McMahon, 237 AD3d at 751. But as indicated, exchanged discovery was not filed with the Court. This is not unusual, but as a result, the Court does not have much on this score. With respect to the Legislature, the Court thinks the quality of evidence is more meaningful than a quantity of evidence. While this prong should not be read out of the statute, the People might not find quarter hereunder, if the name of an exculpatory witness was not disclosed because it was buried under volumes of paper having less evidentiary utility. 

The case's complexity
Before the factual universe expanded, it might be said this was simple case of he-said/she-said. However, once previously undisclosed efforts at locating the Defendant with license plate readers, lab results, and eyewitness identification are injected into the case, the Court has no way of knowing whether a more elaborate defense would have been run at trial. As such, this prong should likely be assessed in relation to the effect newly disclosed evidence might have on factual theories of a case. This is not inconsistent with McMahon's instruction that non-complex cases cut against a finding of due diligence. id. at 751.

Whether the People knew the belatedly disclosed material existed
While the People did not previously know of the belatedly disclosed material, their lack of knowledge is the whole problem. Again, this is not an instance where it is readily apparent that the belatedly disclosed materials had minimal relation to case, such as a disciplinary report about one of a dozen police officers involved in the investigation, having shown up at roll-call, with un-shined shoes, back in 2010. The materials described do not smack of an attempt at stretching statutory construction toward the Nth degree. However, as stated, under LaClair, Hernandez, and Valentin, the People should have known about this material earlier.

The People's explanation for the lapse
Without belaboring the point, the Court does not find the explanation sufficient.

The People's response when apprised of missing discovery
This scenario is not operative here, inasmuch as the Defense did not notify the People; but rather, the People, to their enormous credit, notified the Defense. Recently, in People v. Stewart, 87 Misc 3d 1229[A] *8, 2025 Slip Op 51727 [U] (Sup Ct, Kings County 2025), Supreme Court denied a CPL §§ 30.30/170/245 motion, because the defense should have realized discovery was missing earlier, and then waited too long in bringing a challenge; See also People v. Seymour, 84 Misc 3d 23, 25(App Term, 2d Dept, 9th & 10th Jud Dists 2024).
Nevertheless, here, the Court cannot conclude the Defendant should have known to alert the People. The Court notes the Defense has exhibited a reciprocation of every bit of the People's good faith. There is no indicia of dilatory tactics, or of the Defense sitting on knowledge, in bad faith, to run out the clock.

Whether belated discovery was substantively duplicative, insignificant, or easily remedied
At bottom, the answer to this prong is itself a he-said/she-said matter. As set forth above, the Court is not comfortable holding that the belatedly produced materials are substantively duplicative, insignificant, or easily remedied. However, again, it is at least apparent that this is [*6]not an instance where a defendant is looking for a dismissal because the People did not produce a 15-year-old disciplinary report about un-shined shoes.

Whether the omission was corrected
Indeed it was.

Whether the People self-reported and took prompt remedial action without court intervention
Indeed they did. The People graciously fell upon their sword. However, both CPL Art. 245 and McMahon expressly state the People's good faith alone is not sufficient.

Whether the delayed disclosure prejudiced, or impeded the defense's investigation or trial preparation
The Defense says "yes." The People say "no." The Court finds it reasonably likely. 
After considering the totality of the People's efforts, the Court cannot conclude the People were duly diligent. Accordingly, the initial COC was invalid, and the corresponding SOR was therefore illusory. Even though the many adjournments following the filing of the initial COC/SOR were made upon the parties' consent, the illusory SOR ensured all of the adjournments are charged to the People, pursuant to Anderson, Rodriguez, Rios, and, Reyes. As such, the once-tolled Speedy Trial Clock has now accelerated beyond the People's allotted time, and the charges must therefore be dismissed.
In the United States, courts do not make laws; courts follow laws. A court cannot disregard the law, in order to ensure a defendant is prosecuted for allegedly breaking the law, after the prosecution itself, has not complied with the law. To do otherwise, would spit on the Constitution.
New York is now many years into discovery reforms. While these changes altered the pre-trial landscape, and made prosecutors' days somewhat more difficult, it must be remembered that the Framers were not concerned with easing prosecutorial burdens. The oft-repeated refrain that "the court let someone get off on a technicality" is woefully reductive; it also ignores the presumption of a defendant's innocence. If that refrain is the standard, then the Bill of Rights is nothing more than dispensable technicalities to be whimsically disregarded by a lone judge who has an axe to grind.
"Technicality" is not always such a dirty word. A technicality is often a highly desirable curtailment on the government. New York's Legislature has determined that the executive branch of the government needs to turn discovery materials over to criminal defendants promptly. This is hardly unreasonable in the context of the Sixth Amendment:
In all criminal prosecutions, the accused shall enjoy the right to a speedy [ . . . ] trial [ . . . ], and to be informed of the nature and cause of the accusation [and] to be confronted with the [prosecution's] witnesses [ . . . ]. US Const, 6th amend
In New York, this means that when the People are not duly diligent in complying with their obligation to promptly turn discovery materials over to criminal defendants, the People are no longer free to prosecute. From a practical standpoint, due diligence means there were 90 days for someone from the DA's to sit down with the PPD, look through the case file, make copies, and send those copies to defense counsel.

ORDER
Although the People acted in good faith, their efforts in complying with CPL Art. 245 were not duly diligent. Accordingly, the initial COC was invalid. It rendered the initial SOR illusory for reasons within the People's control. As a result, all of the adjournments are chargeable to the People, thereby causing the once-tolled Speedy Trial clock to accelerate beyond the People's allotted time. Therefore, under the laws of the State of New York, the accusatory instrument the Defendant stands charged under is hereby DISMISSED.
As such, the Securing Order incorporating the Bond is VACATED, and the Bond is CANCELLED, with the Obligor being discharged, released, exonerated, and acquitted from liability under such Bond.
The Clerk shall enter this Order, without further Court action.
IT IS SO ORDERED.
21 December 2025
Piermont, NY
Marc R. Ruby
Village Justice

Footnotes

Footnote 1:Alternatively referred to as "Obligor" with relation to the bail bond securing the Defendant's attendance in court. 

Footnote 2:In some cases, each and every one of the 90 days in the People's trial readiness period are critical in determining whether the People were timely in complying with discovery obligations. As such, distinctions on when the 90 days begin to run, and when the clock tolls along the way, become relevant. Those distinctions do not factor into the analysis leading to the disposition, and will not be discussed. 

Footnote 3:No previous motions have been made, and nothing was under the Court's consideration, until the Defense filed the instant application.

Footnote 4:The Shaggy defense is the bald assertion that "it wasn't me." Connection Distrib. Co. v Holder, 557 F3d 321, 353 n6 (6th Cir 2009, Kennedy, J., dissenting). The defense, of course, gets its namesake from the song: "It Wasn't Me." By Shaggy. Hot Shot, MCA, 2000.

Footnote 5:This well-known division of labor is summed up as law (the police) and order (the People).